# *The Law Office of James C. Kelly*

244 5th Avenue, Suite K-278
New York, New York 10001

Phone: (212) 920 5042
Fax: (888) 224 2078
www.jckellylaw.com
jkelly@jckellylaw.com



September 11, 2015

**By U.S. Mail**

The Honorable Victor Marrero
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St., Suite 660
New York, NY 10007-1312



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/21/15

Re: *Albert et al v. Blue Diamond Growers*, 15-cv-04087-VM
*Albert et al v. WWF Operating Company*, 15-cv-04870-VM

Dear Judge Marrero:

Please find enclosed plaintiffs' letters in response to defendants' letters notifying plaintiffs of their intention to each file a motion to dismiss the current operating complaints in the above-referenced consolidated class actions.

Thank you for your attention herein.

Respectfully Submitted

James C. Kelly

James C. Kelly, Esq.
**The Law Office Of James C. Kelly**
244 5th Avenue, Suit K-278
New York, New York 10001
Tel: 212-920-5042
Fax: 888-224-2068
Email: jkelly@jckellylaw.com

---

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by plaintiffs.

**SO ORDERED.**

10-21-15
DATE

VICTOR MARRERO, U.S.D.J.

## *The Law Office of James C. Kelly*
*244 5th Avenue, Suite K-278*
*New York, New York 10001*

*Phone: (212) 920 5042*
*Fax: (888) 224 2078*
*www.jckellylaw.com*
*jkelly@jckellylaw.com*

September 11, 2015

**VIA EMAIL**

Joshua L. Solomon
POLLACK, SOLOMAN, DUFFY, LLP
133 Federal Street, Suite 902
Boston, MA 02110

      Re:    *Albert et al v. Blue Diamond Growers*, 15-cv-04087-VM

Dear Mr. Solomon:

      I write in response to your letter dated September 4, 2015, notifying plaintiffs of Blue Diamond Growers' intention to file a motion to dismiss the Second Amended Complaint ("SAC") in the above-referenced matter.

      Plaintiffs respond to Blue Diamond Growers' deficiency allegations as follows:

    **I.**    **Plaintiffs have stated viable claims for relief under New York and California consumer protection statutes.**

      Plaintiffs have adequately alleged that Blue Diamond Growers ("Blue Diamond") has falsely represented its Almond Breeze almond milk labeled product as a premium product that contained a significant amount of almonds, when in truth, the product contained only 2% of almonds. SAC ¶¶ 14-76. Plaintiffs have further adequately alleged that Blue Diamond Growers has made false health claims as to Almond Breeze and reasonable consumers have been misled by Blue Diamond's false statements. SAC ¶¶ 26, 30, 63-73, 77-87.

      Blue Diamond's argument that a reasonable consumer would not believe Almond Breeze contained a significant amount of almonds is without support. Further, Blue Diamond ignores Plaintiffs' false health allegations on Almond Breeze's product packaging and website, including that Blue Diamond falsely claims that Almond Breeze is certified by the American Heart Association as heart healthy. SAC ¶¶ 26, 63-64. Instead, Blue Diamond argues that because it does not specify the exact amount of almonds contained in its product, plaintiffs' health claims fail as a matter of law. Said argument is unsupported and without merit. Blue Diamond must show that the health claims are not false and misleading as a matter of law, which it cannot do. Further, Blue Diamond's failure to argue that the American Heart Association did indeed certify Almond Breeze as hearth healthy indicates that it is not certified as alleged by plaintiffs. In addition, Blue Diamond ignores plaintiffs' claim that it is currently falsely representing to

consumers on its Almond Breeze Facebook page that Almond Breeze contains more than 50 almonds per half gallon, when the product contains less than 30 almonds. SAC ¶¶ 74-76.

Blue Diamond's citation to *Red v. Kraft Foods, Inc.*, 2012 U.S. Dist. LEXIS 164461, at *11-12 (C.D. Cal. Oct. 25, 2012), is misplaced. In *Kraft Foods*, the court found that a statement on a box of crackers, that the crackers were "Made With Real Vegetables," would not lead a reasonable consumer to believe that the crackers "contains huge amounts of vegetables." Here, plaintiffs do not take action with a single statement, but many alleged false statements. Further, Almond Breeze does not state that it is made with almonds, it states that it is made from almonds. Moreover, in *Kraft Foods*, there were no allegations that a cracker could be made from vegetables, whereas here, plaintiffs allege that real almond milk is primarily only made from almonds. SAC ¶¶ 21-22. Indeed, as alleged by plaintiffs, Blue Diamond admits and defines in the ingredient section of Almond Breeze that "almond milk" consists of just water and almonds. SAC ¶¶ 60-61. Almond Breeze and similar 2% almond content beverages are no different than imitation fruit or vegetable juice products that contain just 2% juice. Unfortunately, the US Food and Drug Administration ("FDA") has not yet extended to nut based beverages the FDA rules that require the disclosure of percentages of actual fruit and vegetable juice contained in fruit and vegetable labeled beverages sold to consumers. However, that does not give Blue Diamond the right to mislead consumers.

Blue Diamond's reliance on *Ang v. Whitewave*, 2013 U.S. Dist. Lexis 173185, *12-13 (N.D. Cal. Dec. 10, 2013), is also misplaced. The issue in *Ang* was whether the almond milk labeled product could be described as a "milk" when it is not dairy milk. There was no discussion as to whether the product could be described as almond milk even though it contained only 2% of almonds, and there is no indication that the court in *Ang* even knew that the product barely contained any almonds.

Blue Diamond's argument that plaintiffs' alleged injury under New York GBL section 349 is insufficiently pled under Rule 12(b)(6), is without merit. Plaintiffs do not make a barebone unsupported allegation that they "paid a premium price" for Almond Breeze. Plaintiffs allege that almond milk "cost much more than milk" and that is another reason that they believed it contained a significant amount of almonds. SAC ¶¶ 78-80. Plaintiffs have also alleged that "if Plaintiffs and consumers knew that Defendant's almond milk labeled products contained only 2% of almonds, they either would have purchased lower priced dairy milk or water, or would have not purchased said products at a premium price, as the false and misleading statements are artificially inflating demand and thus the price of Almond Breeze and Silk." SAC ¶85. *See Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 481, 2014 U.S. Dist. LEXIS 47180, *30 (S.D.N.Y. 2014) (finding that plaintiff adequately alleged a GBL section 249 injury in that "a plaintiff may properly allege…that 'the price of the product was inflated as a result of [the] defendant's deception.'").

## II. Plaintiff Albert is entitled to restitutionary damages under California's Unfair Competition Law ("UCL").

Plaintiffs do not seek broad contract or tort damages but only restitutionary damages from Blue Diamond. Nor does the SAC anywhere indicate that it seeks any other damages

Joshua L. Solomon
September 11, 2015
Page 3

besides restoration of funds that have been acquired by Blue Diamond as a result of the alleged misrepresentations.

### III. Unjust enrichment.

Plaintiffs hereby withdraw their unjust enrichment claim.

### IV. Injunctive Relief and Nationwide Class.

Plaintiffs have standing to seek injunctive relief in this matter. *See Ackerman v. Coca-Cola Co.*, 2013 U.S. Dist. LEXIS 184232, *56-58, 2013 WL 7044866 (E.D.N.Y. July 17, 2013) (collecting cases on the proposition that even though the named plaintiff may not suffer injury in the future because he or she already knows of the deceptive practice, the named plaintiff still has standing to seek injunctive relief seeking a change to the deceptive practices because to hold otherwise would allow for unsuspecting consumers to continue to be damaged). Plaintiffs have suffered the same exact injury that unsuspecting consumers and proposed class members are now suffering in that they have, like proposed class members are now, purchasing Almond Breeze under the impression it contains a significant amount almonds, or more than two cups of almonds, and is a healthy and premium product when in fact there are barely any almonds contained therein and there is not a single proven or even linked health benefit to the product, but are potential negative health benefits to the product as a result of containing carrageenan to create its milk like texture. Injunctive relief is further important here because consumers across the nation are replacing their dairy milk intake with Almond Breeze or similar almond milk labeled products, and feeding this to their families and children. It is important that consumers are aware that it barely contains any almonds. *Nicosia v. Amazon.com, Inc.*, 2015 U.S. Dist. LEXIS 13560, *36 (E.D.N.Y. Feb. 2, 2015), relied upon by defendant, is inapplicable as Amazon already stopped selling the 1 day diet pill that plaintiff purchased.

Plaintiffs have inadvertently carried over nationwide class allegations in paragraph 1 of the SAC. It is clear from the "Class Action Allegations" section and Counts I-III that Plaintiffs only seek to represent a New York and California class.

Sincerely,

James C. Kelly

cc: Judge Victor Marrero (US mail)
Wendy Sabina Dowse (email)
Joshua H Epstein (email)
Alexandra Davidson (email)
Angela Agrusa (email)
Megan Oliver Thompson (email)

# *The Law Office of James C. Kelly*

*244 5th Avenue, Suite K-278*

*New York, New York 10001*

*Phone: (212) 920 5042*
*Fax: (888) 224 2078*
*www.jckellylaw.com*
*jkelly@jckellylaw.com*

September 11, 2015

**VIA EMAIL**

Angela C. Agrusa
Liner, LLP
1100 Glendale Avenue, 14th Floor,
Los Angeles, CA 900234

      Re.    *Albert et al v. WWF Operating Company*, 15-cv-04870-VM

Dear Ms. Agrusa:

      I write in response to your letter dated September 4, 2015, notifying plaintiffs of WWF Operating Company's intention to file a motion to dismiss the Amended Complaint ("AC") in the above-referenced matter.

      Plaintiffs respond to WWF Operating Company's deficiency allegations as follows:

**I.**    **Plaintiffs have satisfied the reasonable consumer standard.**

      Plaintiffs have adequately alleged that WWF Operating Company ("WhiteWave") has falsely represented its Silk almond milk labeled product as a premium product that contained a significant amount of almonds, when in truth, the product contained only 2% of almonds. AC ¶¶ 15-77. Plaintiffs have further adequately alleged that WhiteWave has made false health claims as to Silk and reasonable consumers have been misled by WhiteWave's false statements. AC ¶¶ 37-38, 66-72.

      WhiteWave's argument that a reasonable consumer would not believe that the heart symbols placed on Silk's product packaging related to heart health benefits from almonds is unreasonable. It cannot be said as a matter of law that a reasonable consumer would believe that WhiteWave's claim to "Put a little ♥ in your day" simply means that consumers would love the product. The more reasonable inference, especially when coupled with WhiteWave's heart health claims on its website, is that consumers will be benefitting their heart if they purchase Silk as a result of the "rich" almond content contained therein. Further, WhiteWave's argument that Silk is entitled to a heart health symbol pursuant to 21 CFR §§ 101.14 (health claims) and 101.75 (saturated fat and cholesterol and risk of coronary heart disease), is without merit. CFR §§ 101.14 does not provide that a heart symbol health claim can be made on a product containing

Angela C. Agrusa
September 11, 2015
Page 2

2% of almonds. Further, CFR §§ 101.75 is not applicable as the heart symbol health claim is not accompanied with the required statement that "diets low in saturated fat and cholesterol "may" or "might" reduce the risk of heart disease" nor does the claim state "that coronary heart disease risk depends on many factors" as required by CFR §§ 101.75(c)(2)(A) and (c)(2)(E). Finally, a reasonable consumer is not purchasing Silk at a premium because it is low in saturated fat or cholesterol, but from the perceived health benefits from the almonds contained therein. WhiteWave's I ♥ NY argument is also without merit. A consumer would not think that they are obtaining a health benefit from purchasing a product that states I ♥ NY.

WhiteWave's statement on its website that "A plant-based diet rich in fruits, vegetables, nuts, whole grains and meat substitutes (like soy) may reduce mortality from heart disease and lower the incidence of high cholesterol and diabetes" is misleading dietary guidance. It leads consumers to believe that Silk is "rich" in nuts. Indeed, WhiteWave goes on to state immediately after said dietery guidance that "Silk can be a great place to begin" and to "try...almond milk...instead of your usual dairy milk..." AC ¶ 38. Indeed, the US Food and Drug Administration would find these claims misleading when taken together. *See* 60 Fed. Reg. 66206, 66212 (noting that health claims on products that violate the FDA's fortification policy "would be misleading because consumers would be purchasing the food, in part, to achieve a more healthful diet, when, in fact, such foods are inconsistent with dietary guidelines. Further, such claims could be damaging if consumers are encouraged to replace wholesome and nutritious foods that are recommended in dietary guidelines with these foods."); 58 Fed. Reg. 2478, 2521 ("the value of health claims should not be trivialized or compromised by their use on foods of little or no nutritional value... [or by] claims intended to promote the consumption of a food that is incompatible with dietary guidelines would be misleading to consumers.").

WhiteWave's reliance on *Ang v. Whitewave*, 2013 U.S. Dist. Lexis 173185, *12-13 (N.D. Cal. Dec. 10, 2013), is misplaced for the reasons previously stated by plaintiffs.

WhiteWave's argument that Silk is not misleading because none of the challenged statements (or pictures) claim a specific amount of almonds is without merit. WhiteWave originally described Silk as PureAlmond and still describes Silk as being almond milk. AC ¶¶ 33-36. Consumers reasonable believed that the product was primarily made from almonds and plaintiffs sufficiently alleged that it would take at least two cups of almond to even come close to achieving the rich consistency and taste of the Silk beverage, a taste which WhiteWave also falsely states comes from almonds. AC ¶¶ 37, 39, 47-48, 79-83. It is telling that WhiteWave would go through great lengths to display numerous amounts of almonds all over its product packaging with bright colored fancy labeling and make claims regarding the "rich" amount of nuts in Silk on its website but cannot, even in small print, state that the product contains only 2% of almonds.

WhiteWave's citation to *Red v. Kraft Foods, Inc.*, 2012 U.S. Dist. LEXIS 164461, at *11-12 (C.D. Cal. Oct. 25, 2012), is misplaced for the reasons as stated in plaintiffs' letter to Blue Diamond Growers, dated September 11, 2015.

Angela C. Agrusa
September 11, 2015
Page 3

## II. Plaintiffs have adequately alleged that they have relied on the misleading statements cited in the AC

WhiteWave's claim that plaintiffs have failed to state that they relied on the misleading statements cited in the AC is without merit. Plaintiffs specifically allege that they purchased Silk because they believed it was a healthy and premium product because it was labeled as almond milk, the packaging contained pictures of heart symbols and numerous almonds, and that they relied on the health claims on Silk's website. AC ¶¶ 79-81.

Plaintiffs' allegation that they also purchased Silk because of information in the marketplace that almond milk was a healthy product is actionable as WhiteWave knew that consumers believed that almond milk was a healthy product and is taking advantage of that knowledge in selling almond milk with barely any almonds therein. Indeed, WhiteWave stated in its annual report to shareholders that "We believe that the plant-based foods and beverages category will continue to experience favorable growth supported by a rising consumer focus on nutritional benefits, such as digestive and heart health, as well as by the positioning of these products as low-fat, low-calorie, and cholesterol-free dairy alternatives." AC ¶ 46.

## III. Unjust Enrichment and Injunctive Relief

Plaintiffs hereby withdraw their unjust enrichment claim.

Plaintiffs have standing to seek injunctive relief in this matter for the reasons previously stated and in the letter to Blue Diamond Growers.

Sincerely,

James C. Kelly

cc: Judge Victor Marrero (US mail)
Wendy Sabina Dowse (email)
Joshua H Epstein (email)
Alexandra Davidson (email)
Angela Agrusa (email)
Megan Oliver Thompson (email)